NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DG3 NORTH AMERICA, INC., | |
| Plaintiff, | Civil Action No. 14-5123 (SRC) |
| v. | OPINION |
| LABRADOR REGULATED INFORMATION TRANSPARENCY, INC., | |
| Defendant. | |

**CHESLER**, District Judge

     This matter comes before the Court upon Plaintiff DG3 North America, Inc.'s ("Plaintiff" or "DG3") motion to dismiss the counterclaims asserted by Defendant Labrador Regulated Information Transparency, Inc. ("Defendant" or "Labrador"). Labrador has opposed the motion. The Court has considered the papers filed by the parties, and, for the reasons expressed below, grants the motion in part and denies it in part.

**I. BACKGROUND**

     DG3 initiated this breach of contract action against Labrador in New Jersey state court, seeking to recover monies Labrador has allegedly failed to pay for printing services rendered between April and June 2014. According to the Complaint, DG3 is a New Jersey corporation engaged in the business of providing print and graphic communications services. Labrador, a Delaware corporation headquartered in Atlanta, Georgia, provides design and advisory services

in connection with the preparation of documents to be filed with the Securities and Exchange Commission ("SEC"). Labrador removed this action from the Superior Count of New Jersey, Hudson County, pursuant to 28 U.S.C. § 1441, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

In its responsive pleading, Labrador asserted four counterclaims against DG3: tortious interference with employment agreement, misappropriation of trade secrets, tortious interference with business relationships and unfair competition. These claims arise from two coinciding events, both occurring in or around June 2014: DG3's launch of an advisory and consulting operation known as "Argyle" and the departure of Labrador employee Iain Poole to commence employment with DG3. According to the allegations made in the Counterclaim, prior to Argyle's launch, DG3 had been engaged solely in the business of financial printing services. The consulting services of Argyle, Labrador alleges, are virtually identical to Labrador's services and thus make DG3 a direct competitor of Labrador. Poole, who had served as Labrador's United States sales director since 2012, was allegedly approached by DG3 in 2014 to join its Argyle consulting operation. The Counterclaim alleges that DG3 began these discussions with Poole and offered him employment  even though it knew, or should have known, that Poole was bound by an employment agreement with Labrador, which included restrictive covenants, including non-solicitation of customers, non-disclosure of confidential information and trade secrets and non-solicitation of Labrador employees for other employment.

Labrador grounds its claims in a number of factual allegations identifying conduct by DG3 and Poole which violated these restrictive covenants. It alleges that DG3 used Poole's knowledge of Labrador's customer identities, customer preferences and requirements, pricing structure and other information considered by Labrador to be proprietary and confidential to

persuade Labrador's existing customers to switch to Argyle's services.  The Counterclaim names a number of Labrador clients that have been solicited by DG3 and Poole and identifies one that transitioned its business to Argyle after being offered similar investor relations services to Labrador's.  It alleges that an August 2014 email sent by Argyle to current and prospective customers, including Labrador clients, announced a corporate governance training course to be led by Poole which is, according to Labrador, nearly identical to a Labrador course.  It thus avers that the email reflects another instance of DG3's attempt to solicit customers using information Poole learned during his employment with Labrador.  Labrador also alleges that, through Poole, DG3 approached other Labrador employees to entice them to join DG3.  Labrador seeks monetary and injunctive relief against DG3.

## II.  DISCUSSION

### A.  Legal Standard

Pleading a cognizable claim for relief is governed by Federal Rule of Civil Procedure 8(a), which provides that a legally sufficient pleading must contain "a short and plain statement of the claim showing that the pleading is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) provides a mechanism by which a defendant may defeat a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S.

3

at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). While the Court must accept all factual allegations as true, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

### B. Sufficiency of the Claims

The Court begins its analysis by noting a well-established rule concerning the scope of a motion to dismiss. In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A corollary to this rule is that, with few and narrow exceptions, matters extraneous to the pleading may not be considered in determining whether a claim meets the pleading standard of Federal Rule of Civil Procedure 8(a). In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). On a motion to dismiss for failure to state a claim, the issue before the

Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In spite of this axiomatic standard governing the sufficiency of a claim, DG3's attack on the sufficiency of the counterclaims consists almost entirely of the argument that "there is no *evidence*, beyond highly speculative and unsupported statements, to sustain any of these claims." (DG3 Mot. at 1) (emphasis added). Rather than engage in any meaningful analysis of the factual allegations actually set forth in Labrador's Counter-Complaint, DG3 presents its own version of events, relying primarily on the affidavit of Mr. Poole. Such extrinsic material has no bearing on this motion and will not be considered by this Court. See Snyder v. Baxter Healthcare, Inc., 393 F. App'x 905, 907 n.4 (3d Cir. 2010) ("Pursuant to Rule 12(b)(6), affidavits or other peripheral documents are generally not permissible for a district court's consideration because a motion to dismiss attacks claims contained by the four corners of the complaint."); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) (holding that, on Rule 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record.").[1]

The movant, here DG3, "bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). It has failed to do so. The Court will briefly review each counterclaim and the factual allegations which support it.

---

[1] Indeed, recognizing that it has presented matters outside the initial pleadings in challenging the counterclaims, DG3 notes that the Court has discretion to accept the extrinsic material and convert the motion to dismiss into a motion for summary judgment. While Federal Rule of Civil Procedure 12(d) authorizes this approach, the Court will not consider the Poole Affidavit and other extrinsic material submitted by DG3 in support of its motion and thus will not convert this motion into a motion for summary judgment under Federal Rule of Civil Procedure 56.

1.  Tortious Interference with Employment Agreement

To state a claim for tortious interference with a contract under New Jersey law, a plaintiff must allege actual interference with a contract by a defendant who is not a party to the contract, that the interference was intentional and without justification, and the interference caused damage. Printing Mart Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751 (1989). The claim is this case is premised upon the theory that DG3 interfered with the Employment Agreement between Labrador and Poole by inducing Poole to breach the agreement's restrictive covenants. The Counterclaim alleges specific instances of actual interference by DG3 with the non-solicitation provision: sending an August 2014 email to customers, including existing Labrador customers, to promote a corporate governance program to be led by Poole and having Poole contact Labrador customers with the offer to provide similar advisory services through DG3's Argyle operation. It also alleges that DG3 courted Labrador customers to transition their business to the Argyle services by using confidential customer information known by Poole from his employment with Labrador, thus interfering in the non-disclosure covenant of the Employment Agreement. Labrador has alleged that such interference was intentional and unjustified, averring that DG3 had actual knowledge of Poole's Employment Agreement and that such restrictive covenants are standard in the SEC printing and consulting industry. Damages resulting from such conduct are also alleged, for example, in the loss of a particular Labrador client solicited by DG3. Assuming these allegations to be true, DG3's plausible liability for tortious interference with the Employment Agreement has been pled in conformity with Rule 8(a), and the claim will therefore survive this motion to dismiss.

      2.  <u>Misappropriation of Trade Secrets</u>

The elements of a claim for misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) communicated in confidence by the plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by the competitor with knowledge of the breach of confidence; and (5) used by the competitor to the detriment of one claiming misappropriation. <u>Rohm & Haas Co. v. Adco Chem. Co.</u>, 689 F.2d 424, 429-30 (3d Cir. 1982). Labrador alleges that customer identities and preferences as well as information concerning pricing were disclosed by Poole to DG3 and then utilized to sway Labrador customers to switch to DG3's Argyle services. New Jersey courts have recognized customer lists, pricing, marketing techniques and other information relating to business operations to constitute trade secrets. <u>Lamorte Burns & Co., Inc. v. Walters</u>, 167 N.J. 285, 298-99 (2001); <u>Commc'ns Workers of Am. v. McCormac</u>, 417 N.J. Super. 412, 437-38 (App. Div. 2008). Labrador's allegations about DG3's utilization of such information together with the allegations concerning both Poole's and DG3's awareness that the information was treated as confidential by Labrador suffice to set forth a cognizable claim for misappropriation of trade secrets.

      3.  <u>Tortious Interference with Business Relations or Economic Advantage</u>

To assert a viable claim for tortious interference with business relations or economic advantage, a plaintiff must allege facts that "show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby." <u>Lamorte Burns & Co.</u>, 167 N.J. at 305-06. Malice, for purposes of this cause of action, "means that harm was inflicted intentionally and without justification or excuse." <u>Id.</u> at 306. As this Opinion has discussed, Labrador has alleged that DG3 knowingly used confidential information about Labrador's customers to solicit their business. It has

specifically identified one Labrador client that in fact chose to engage the services of DG3 as an alleged result of DG3's solicitation. The claim has been sufficiently pled.

        4. Unfair Competition

DG3 has, however, correctly pointed out that the unfair competition claim is duplicative of the tortious interference claims. Though Labrador argues that the claim addresses a broader "scheme to rapidly develop a mirror business" (Labrador Opp. at 19) and is therefore not duplicative, it identifies the offending conduct as exactly the same conduct giving rise to the other counterclaims: DG3's alleged misappropriation of customer information and use of this information to solicit and encourage Labrador customers to transition their business to Argyle operation. Courts in the District of New Jersey have held that, because unfair competition is a rubric which subsumes claims for tortious interference with business or contractual relations, and not a recognized cause of action in and of itself, a claim for "unfair competition" will be dismissed where it is duplicative of a tortious interference claims. Diversified Indus., Inc. v. Vinyl Trends, Inc., Civil Action No. 13-6194 (JBS), 2014 WL 1767471, at *6 (D.N.J. May 1, 2014) (citing Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc., A3714-07T1, 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010); C.R. Bard, Inc. v. Wordtronics Corp., 235 N.J. Super. 168, 172 (Law Div. 1989)). Labrador's unfair competition claim will accordingly be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Labrador's counterclaim for unfair competition but will deny DG3's motion to dismiss the counterclaims in all other respects. An appropriate Order will be filed.

                                                       s/Stanley R. Chesler
                                                    STANLEY R. CHESLER
                                                    United States District Judge

Dated:  November 12, 2014

9